ROYAL CASUALTY COMPANY, (Plaintiff) Appellant, v. EDWIN S. PULLER, (Defendant) Appellant.

St. Louis Court of Appeals, June 6, 1916.

1. **APPELLATE PRACTICE:** Review: Necessity of Presenting Points in Briefs. A point made in the trial court that is not presented in appellant's brief in the appellate court will be regarded as having been abandoned.

2. **CORPORATIONS:** Evidence: Parol Evidence Concerning Happenings at Corporate Meetings. Where the records of directors' meetings of a corporation are silent as to the matters alleged to have taken place thereat, parol testimony is admissible to show what actually occurred; overruling Chouteau v. Dean, 7 Mo. App. 1. c. 214.

3. ———: Acts and Contracts of Corporators: Power of Corporation to Ratify. A corporation may in good faith ratify or adopt agreements made or acts performed by the corporators respecting

apparently reasonable and proper. organization expenses, such as allowing commissions for securing stock subscriptions, etc., where such ratification or adoption will not result in impairing the capital or the surplus provided for by the charter.

4. ————: ————: ————. A contract, apparently fair, allowing the promoter of a corporation, for services in securing subscriptions to its capital stock, a commission on his own subscription as well as on a large number of subscriptions by others, may be adopted or ratified by the corporation, where such action will not result in impairing its capital or the surplus provided for its charter; there being no distinction, under such circumstances, between commissions on the promoter's own subscription and on those procured by him from others.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock*, Judge.

REVERSED AND REMANDED (*with directions*).

*Schnurmacher & Rassieur* for appellant Puller.

(1) A corporation may ratify a contract made by its corporators either (a) by its acts of accepting the benefits and tacit acquiesence in the payment made therefor, or any act by which ratification may be implied, or (b) by direct approval by its board of directors of such payment for services rendered for the benefit of the corporation, either by formal or informal action. Brown Contracting Co. v. Bambrick Construction Co., 150 Mo. App. 505; Pittman v. Lead & Zinc Co., 113 Mo. App. 513; Taussig v. Railroad, 116 Mo. 28; Diamond Coal Co. v. Watson, 107 Mo. App. 451; 2 Purdy's Beach on Corporations, 812. (2) Where the corporate record is silent as to the action taken by a board of directors, parol evidence is admissible to supply such omission. No formal action by the corporation is necessary to show a ratification or adoption of acts or agreements in its behalf by its directors. Southern Hotel Co. v. Newman, 30 Mo. 118; Trustees of St. Mary's Church v. Cagger, 6 Barb. 579; Taussig v. Railroad, 166 Mo. 28; State ex rel. v. People's U. S. Bank, 197 Mo. 574; 10 Cyc. 1032; 1 Clark & Marshall on Private Corporations, sec. 101c; Sec. 2993, R. S., 1909.

*F. H. Bacon,* for appellant Royal Casualty Co.

(1) The corporators, under the laws of this State, had no power or authority to make any contract for the payment of commissions or salaries, but the law contemplates that the entire amount of the capital and surplus shall be in the hands of the treasurer of the corporation at the time the charter is accepted and organization had. Taylor v. St. Louis National Life Ins. Co., 181 S. W. 8.   (2) The agreements between the defendant and the so-called corporators being void, the action of defendant in retaining seven thousand dollars under the guise of a salary and commissions not only on stock subscribed by others, but on his own subscription was all unauthorized and the defendant must account to the corporation for such funds so wrongfully received. It is not in the power of the directors of the corporation to ratify such wrongful action because to do so would be a violation of the statute.   Pollitz v. Railroad, 100 N. E. 721; Higgins v. Lansirgh, 154, Ill. 301.

ALLEN, J.—This is an action by an insurance company organized under what is now article 6 of chapter 61, Revised Statutes 1909, to recover from defendant the sum of $7280.24, being monies alleged to have been wrongfully received and retained by defendant as salary while a member and chairman of an organization committee, for attorney's fees, and as commission on stock subscriptions, prior to compliance by the corporators of plaintiff company with the provisions of sections 7002 and 7003, Revised Statutes 1909, and the obtaining of a license to do business as an insurance company. The trial below, before the court without a jury, resulted in a judgment for plaintiff for $1923.75, with interest from the institution of the action, and from this judgment both plaintiff and defendant have appealed.

It appears that on February 18, 1908, the corporators of plaintiff company, thirteen in number, met in the city of St. Louis, having in view the organization

of an insurance company under the provisions of the article and chapter of the statutes above mentioned. Among other things, they selected an organization committee composed of the defendant, one Pickrell and one Sutton, of which committee defendant was chairman and Pickrell secretary, and authorized this committee to take all steps that might appear to be necessary to bring about the organization of the proposed company, and to "purchase necessary supplies, and furniture, employ clerical help and engage solicitors to solicit subscriptions to the capital stock of the company and to pay therefor such sums as they may deem proper, not to exceed eight per cent. of the total amount of the subscription to the capital and surplus." It was resolved that each corporator was "authorized to act as solicitor to obtain subscriptions to the capital stock and to receive as commission therefor a sum equal to the maximum rate paid other solicitors for the same kind of service." Defendant and Pickrell were authorized to perform the office work pertaining to the organization at a salary of $25 per week each. And the organization committee was authorized and directed to "pay all bills, salaries, commissions and express from time to time," as they might approve, out of the "organization fund."

After due publication of the notice required by section 999, Revised Statutes 1909, the corporators duly filed the declaration provided for by section 7000, and obtained the certificate of incorporation mentioned in section 7001. The amount of the authorized capital stock was $100,000, divided into one thousand shares of the par value of $100 each; no surplus being provided for in the charter. However, subscriptions to the stock were taken on the basis of $125 per share in order to create a "voluntary surplus" for the purpose, in the main, of defraying the organization expenses; which expenses were expressly limited to fifteen per cent. of the amount subscribed—this appearing in the subscription blanks used.

It appears that the organization committee was unable to secure solicitors on a basis of eight per cent. of the subscriptions obtained, for the reason, it is said that such solicitors ordinarily receive larger commissions; and that at a meeting of the corporators on March 21, 1908, the organization committee was authorized "to use fifteen per cent. of the subscriptions to capital and surplus in payment of organizing expenses:" And the corporators provided by resolution that all solicitors, including corporators, would be allowed $15 per share "for each share of stock subscribed by or through them." Some solicitors were thereafter employed, but it seems that the subscriptions, for the most part, were either made by or procured through the efforts of members of the organization committee.

During the year 1908 and the early part of 1909 subscriptions were procured to all of the capital stock; and such subscriptions, less commissions allowed in accordance with the resolution of the corporators of March 21, 1908, were duly paid to the organization committee, and that committee, out of the "voluntary surplus" paid all organization expenses incurred. In due course the organization of the company was perfected, and it was duly licensed to do the business contemplated by its charter. The first meeting of its stockholders was held on January 16, 1909, at which meeting directors were elected, nine in number—the number having been reduced from thirteen to nine; and thereafter the officers of the company were duly elected by the board of directors. Thereafter, on March 10, 1909, defendant, as chairman of the organization committee, delivered to the president and treasurer the net amount of cash, certificates of deposit and securities remaining in the hands of the committee after defraying all organization expenses, including the payment or allowances of commissions on subscriptions as aforesaid; such net balance amounting to $106,231.96.

In the total amount disbursed by the committee, or allowed by it as commissions, were included the items here sued for. That is to say defendant was

paid $932.12 as salary for office work performed while
a member of the organization committee (said to be
for forty-seven weeks), $200 as attorney's fees for
incorporating the company, and $6148.12 as commis-
sions on stock subscriptions.   In the last-mentioned
item of $6148.12, was included the amount of $1923.75
—the amount of the judgment below—as commissions
on stock subscribed by defendant himself; the re-
mainder of this item being commissions on subscriptions
to two hundred and sixty-nine shares of stock procured
by defendant from eleven different subscribers.

During the trial below, however, counsel for plain-
tiff in open court withdrew "its claim against defend-
ant for $200 paid him for legal services in incorpo-
rating the company."

On March 22, 1909, a meeting of the board of
directors was held, at which were present eight direct-
ors, among whom were the three members of the or-
ganization committee.   Defendant's testimony and that
of certain directors goes to show that at this meeting
defendant, as chairman of the organization committee,
made full report concerning the expenditures of the
committee, and the commissions allowed on stock sub-
scriptions, including the commissions received by de-
fendant on subscriptions procured by him and on his
own subscriptions as well; that the books kept by
the committee covering all such items were before the
board, and that the board unanimously approved the
report and the acts of the organization committee in
the premises.   And defendant offered evidence relative
to the vote taken, and to show that no member of the
organization committee voted on the matter mentioned;
but this was excluded.   No record of such action by
the board appears in the secretary's minutes of the
meeting of March 22, 1909, aforesaid, but parol evi-
dence was admitted, over the objection of plaintiff,
to this effect.  This evidence is clear and convincing,
and nothing appears to contradict it.   One director,
testifying for plaintiff, said that reports were made by
Mr. Puller, but that he did not remember the details

194 M. A.—38

thereof. He did not undertake to say that the proceedings as testified to by defendant's witnesses were not in fact had.

It was shown that defendant's right to receive the monies here sued for was at no time questioned prior, to the institution of this action; and that defendant received no notice concerning the matter other than through the filing of the suit. It seems that the company at the outset formally employed defendant as "manager of the claim department and counsel" for a term of years, and that he served in that capacity until February, 1911, when one man acquired a controlling interest in the stock of the company, whereupon defendant was "removed" from such position. It is said that defendant thereafter instituted a suit for salary alleged to be due him and for breach of contract of employment; and thereafter this action was instituted against him.

I. One assignment of error made by plaintiff, as appellant, pertains to the rulings of the trial court in admitting parol testimony relative to the action of the board of directors on March 22, 1909. The point is not argued in plaintiff's brief, and it accordingly may be regarded as having been abandoned. It may be well, however, to say that since the records were silent as to the matters said to have taken place at this meeting of the board, parol testimony was admissible to show what actually occurred. The principle involved is thoroughly settled law. What was said by this court to the contrary in the early case of Chouteau v. Dean, 7 Mo. App. l. c. 214, should not be followed.

II. It is argued for plaintiff that under the law of this State, the corporators, prior to the organization of the company, had no power or authority to contract for the payment of salaries or commissions; that "the law contemplates that the entire amount of the capital and surplus shall be in the hands of the treasurer of the corporation at the time the charter is accepted and organization had;" and that it was not within the power of the directors of the corporation to ratify the

unauthorized and alleged wrongful acts of the corporators, and of defendant in retaining the monies sued for.

It may be conceded that the acts of the corporators were not originally binding upon the corporation; and that the law will not permit the company's capital or "charter surplus" to be impaired for organization expenses. But it does not follow that the corporation may not, in good faith, ratify or adopt agreements made or acts performed' by the corporators respecting organization expenses, appearing to be reasonable and proper, when to do so in no way impairs either the capital or any surplus provided for by the charter.

Plaintiff places much reliance upon the opinion of the Supreme Court in the recent case of Taylor v. St. Louis National Life Ins. Co., 266 Mo. 283, 181 S. W. 8. But we do not regard that opinion as controlling on the facts of the record now before us. In that case there was no pretense that the corporation, when fully organized, had ratified or adopted the contract with the plaintiff there sought to be enforced. It was sought to hold the corporation liable upon a contract made by one of the corporators with the plaintiff, without more. In the case before us the evidence shows that the corporation did ratify or adopt the agreements of the corporators touching the matter in hand, and accepted and retained the benefits of defendant's services with full knowledge of the facts and with complete approval thereof. Furthermore, by taking subscriptions at $125 per share, the par value being $100, the total organization expense was defrayed without in any wise impairing the capital of $100,000. There was no surplus "agreed upon as a charter measure." [See Taylor v. Ins. Co., supra.] The company's charter merely provides for a capital of $100,000. The "voluntary surplus," created by taking subscriptions at a premium, was for the express purpose of enabling the corporation to defray organization expenses without impairing the capital.

That plaintiff company, after becoming a complete legal entity, fully adopted the agreements made in

the premises by the corporators, by approving the action of the organization committee throughout, with knowledge of the facts, and accepting and retaining the benefits of the services rendered pursuant to such agreements, we think cannot be doubted. And upon well settled legal principles it must follow that the corporation, at this late hour, is in no position to question defendant's right to retain the monies received by him for his services.

Were it true that the retention of such monies by defendant operated to impair the capital of the company, or the surplus "agreed upon as a charter provision," the case would be quite a different one; but there is here no ground upon which to charge a violation of the law in this particular.

It is said that the true principle in such cases is that the subsequent adoption by a corporation of a contract made for its benefit prior to its coming into existence as a legal entity must be regarded as an original contract made by the corporation; but where such adoption appears, and the elements of a contract are all present, the corporation is as fully bound thereby as on any other agreement or undertaking on its part. [See Furniture, etc., Co. v. Crawford, 127 Mo. l. c. 364, 30 S. W. 163; Brown Const. Co. v. Construction Co., 150 Mo. App. l. c. 513, 514, 131 S. W. 134; Van Noy v. Ins. Co., 168 Mo. App. 287, 153 S. W. 1090.] "After becoming a legal entity the corporation has the option of adopting or repudiating contracts for its benefit made by its promoters and the exercise of such option may be manifested as well by the acceptance and retention of the benefits of such contract as by an express formal ratification." [Van Noy v. Ins. Co., supra, l. c. 295, 296.]

It is here not sought to enforce against the corporation a contract wholly or partly executory, but the case is one where valuable services have been rendered in and about perfecting the organization of the corporation, in pursuance of a plan or organization adopted by the corporators and fully consummated,

Royal Casualty Co. v. Puller.

all of which the corporation, as such, later approved, adopted and acquiesced in, receiving and retaining the full benefits thereof. Having received from the organization committee the sum of $106,231.96 with full knowledge of the plan of organization and the acts of the corporators and organization committee, the corporation engaged in business for more than three years before questioning defendant's right to retain the monies received by him for his services. Upon the plainest principles of justice we think it should not now be heard to assert the claim in suit. It is plain to us that an ulterior motive lurks behind the proceeding, and that it has nothing to commend it.

Nor, under the circumstances of the case, do we see any proper ground for distinction between commissions allowed defendant on his own stock subscriptions and those received by him on subscriptions which he procured from others. It is not a case where a subscriber is merely allowed a rebate on his subscription, under the guise of commission; and it is unnecessary to express an opinion as to the validity of an allowance of this character to a subscriber who did not in any way act as a solicitor. Defendant did act as a solicitor and did procure a large number of subscriptions from others. And under the facts disclosed by this record we know of no reason why defendant could not, in good faith, be awarded, as compensation for his entire services in procuring subscriptions, a sum equal to fifteen per cent. on all subscriptions made by or procured through him, when to do so does not impair the capital or charter surplus of the company. If as a part and parcel of the entire agreement with plaintiff he was to receive such commission as compensation for valuable services rendered as a solicitor, and this was subsequently adopted by the corporation, we know of no reason why it should be held invalid.

We are accordingly of the opinion that the judgment below should be reversed and the cause remanded with directions to the circuit court to enter judgment for defendant. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.