UNITED GERMAN SILVER COMPANY *vs.* HOMER D. BRONSON.

Third Judicial District, Bridgeport, October Term, 1917.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

A corporation is under no obligation to pay for services rendered and expenses incurred in promoting its incorporation, unless required to do so by statute or by its charter. It may, however, recognize the equity and propriety of a claim for such services and expenses, and may issue shares of its stock in payment therefor, provided such issue is made in good faith and for value received, and is not prohibited by statute.

In the present case the directors of the plaintiff company, acting in good faith but not in conformity with a vote of the stockholders that the balance of the company's stock should be issued for cash only, voted that the defendant, who was also a director and the president of the company, should be given the fifty shares of stock for which he had subscribed, in full payment for valuable services theretofore rendered and expenses incurred by him in behalf of the company—which in fact were worth more than $2,500, the par value of his stock—and for similar services and expenses in the future. About ten months later the directors passed a resolution calling upon the defendant to pay cash for this stock and subsequently the corporation brought this action to recover the par value of the fifty shares. *Held:*—

1. That inasmuch as the services and expenses were found to have been of benefit to the corporation and were reasonable in amount and were not gratuities in fact or in intent, the action of the directors in paying for them with corporate stock would have operated as a sufficient recognition or adoption of them by the corporation, had it not been for the vote of the stockholders that stock should be issued only for cash.

2. That a compliance with this vote might be waived by the corporation, and was waived by it by instituting and maintaining this suit to recover the par value of the stock with full knowledge of the circumstances attending its issue; and that therefore the action of the directors became effective by way of adoption.

The Corporation Act of this State (Public Acts of 1903, Chap. 194, § 12) provides that shares of stock can be issued only for cash or its equivalent, and that if paid for otherwise than by cash a record of the kind of payment must be made upon the books of the corporation. *Held* that the failure of the directors to make the prescribed

United German Silver Co. *v.* Bronson.

record in a given case did not raise a presumption that the stock was issued for cash.

The law will imply a promise to pay the par value of stock, a certificate for which, issued by the corporation to the recipient in his own name, is delivered to and accepted by him; and this promise may be enforced by and in the name of the corporation.

A corporation may obligate itself to pay for services and expenses incurred in promoting its incorporation, in case of a contract made by a promotor before its incorporation, by adopting the contract, either expressly or impliedly.

Express adoption of such a contract is by vote or resolution of the proper authority. Implied adoption is by acts, conduct, or acquiescence, such as would estop the corporation from denying that it had adopted the contract.

The law has placed certain safeguards about the adoption of the contract of the promotor in behalf of a corporation subsequently incorporated. Its adoption must be within its corporate powers and for its benefit, and the contract must be reasonable and good faith shown in its making and in its adoption.

Where there is no antecedent contract, the services performed and expenses incurred must be found to be of corporate benefit, to be reasonable in amount and not to have been mere gratuities.

Inasmuch as a corporation is powerless to reject services and expenses incurred prior to its incorporation, its mere retention of the benefits arising therefrom cannot be the basis for an estoppel of its right to deny its adoption of, and its liability to pay for, such services and expenses.

Submitted on briefs October 23d—decided December 15th, 1917.

ACTION to recover the par value of shares of the plaintiff's capital stock issued to the defendant, brought to and tried by the Superior Court in Fairfield County, *Curtis, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

*Homer S. Cummings, Charles D. Lockwood, Charles M. Fessenden* and *Matthew H. Kenealy,* for the appellant (plaintiff).

*Nathaniel R. Bronson, Lawrence L. Lewis* and *Charles E. Hart, Jr.,* for the appellee (defendant).

WHEELER, J.   The plaintiff was incorporated October 22d, 1914, under the laws of Connecticut, and was the successor of a corporation doing a similar business and both having capital stock.

The defendant was a stockholder of the predecessor company.   He devoted a great deal of time and incurred personal expenses in securing subscribers to the stock of the plaintiff and in perfecting its organization. He subscribed for fifty shares of the plaintiff of the par value of $50 each, and the certificate for the same was duly delivered to him, but, except as hereinafter stated, he never paid for his subscription.

On October 22d, 1914, the stockholders of the plaintiff voted that stock of the plaintiff should be issued to the amount of $39,000 in exchange for certain real estate and personal property, and on October 26th, 1914, the stockholders voted that the balance of the stock, viz. $61,000, should be issued for cash only, and the directors were authorized to place this stock upon the market.   The defendant, as a stockholder, voted for this resolution.

On October 26th, 1914, the defendant was duly elected a director and president of plaintiff, and so continued until July 8th, 1915.

The defendant rendered services and expended money for the plaintiff corporation after its incorporation.   The defendant rendered these services and incurred these expenses without having a contract with plaintiff, and without having a record of them, and never presented the plaintiff with a bill for them.

At a meeting of the directors in December, 1914, it was voted that the defendant be given the fifty shares in full payment for services theretofore rendered the plaintiff and for similar services to be rendered in the future, and for moneys already expended or which should be expended by him in the future in similar

manner. The value of the services rendered and the expenses incurred by the defendant prior to said meeting was greater than the par value of the stock, viz. $2,500. The defendant continued to perform valuable services for plaintiff so long as he continued a stockholder.

The directors, in all these steps taken, acted in good faith. The directors other than defendant knew of the defendant's services and expenses, and frequently discussed the subject at meetings of the directors. The stockholders of plaintiff never formally ratified the action of the directors in issuing to the defendant the fifty shares.

On or about July 14th, 1915, the defendant sold the fifty shares for $2,795. The plaintiff has duly demanded payment for the fifty shares from all subsequent holders of record of the same, and payment has been refused. These subsequent holders of the fifty shares purchased in the belief that they had been fully paid for.

On or about October 23d, 1915, the board of directors adopted a resolution that the defendant be required to pay, within five days from date of mailing him a copy of the resolution, $2,500 for the fifty shares of stock; the copy of the resolution was duly mailed and received by the defendant, but defendant refused and still refuses to make payment.

The issuance by the plaintiff corporation of the certificate for the fifty shares of stock in the name of the defendant, and its delivery to and acceptance by him, created a relation between him and the corporation from which the law implied a promise on his part to pay the corporation the par value of the stock, and gave the corporation a right of action in its own name to recover the unpaid subscription.

The chief error assigned is the overruling of the plaintiff's claim of law that the services rendered by the defendant, as a promoter, in securing subscriptions for

the plaintiff corporation before its incorporation, was neither cash nor property, and thus could not be held to be a consideration for the subscription.

The services and expenses of the defendant preceding the incorporation and those following it constitute the entire consideration given by him for the stock.

Unless the charter or statute law otherwise provides, and the corporation does not, subsequent to the incorporation, obligate itself to pay, it is under no obligation to pay for the services or expenses incurred in promoting its incorporation.

Our law did not otherwise provide; our inquiry thus is whether the plaintiff, after its incorporation, obligated itself to make these payments. This it may do, in the case of contracts made by a promoter for its benefit before its incorporation, by adopting the contract, either expressly or impliedly.

Express adoption is by vote or resolution of the proper authority. Implied adoption is by acts or conduct or acquiescence, and among such acts are the receipt and retention of benefits. Acts or conduct from which this inference would arise would be those which would estop the corporation from denying that it had adopted the contract.

The law has placed certain safeguards about the adoption of the contract of the promoter in behalf of a corporation subsequently incorporated. It must be made within its corporate powers, for its benefit, be reasonable, and good faith must have surrounded its making and its adoption.

In *Stanton* v. *New York & Eastern R. Co.*, 59 Conn. 272, 22 Atl. 300, we held that a contract between the promoters of a railroad and Hungerford, that he should obtain rights of way and be paid for the same and for his services and expenses in procuring these, which

had been adopted by express vote of the corporation after its incorporation, gave Hungerford a valid cause of action on the contract. We placed our decision upon the principle of ratification, but we pointed out that ratification as used meant the adoption of a previously formed contract.

Ratification and adoption are used interchangeably in the decisions. As it seems to us, adoption better expresses what takes place, for ratification presupposes a principal existing at the time of the agent's action. Clark on Corporations (3d Ed.) § 47. American authorities very generally apply the doctrine of adoption or ratification as we do in *Stanton* v. *New York & Eastern R. Co.*, 59 Conn. 272, 22 Atl. 300. Some of the later cases are: *Van Noy* v. *Central Fire Ins. Co.*, 168 Mo. App. 287, 295, 153 S. W. 1090; *In re Ballou*, 215 Fed. Rep. 810, 812; *City of Belfast* v. *Belfast Water Co.*, 115 Me. 234, 98 Atl. 738; *Munson* v. *Syracuse, G. & C. R. Co.*, 103 N. Y. 58, 76, 8 N. E. 355; *McArthur* v. *Times Printing Co.*, 48 Minn. 319, 51 N. W. 216. Massachusetts holds that unless the elements of a new contract are present there can be no recovery. *Koppel* v. *Massachusetts Brick Co.*, 192 Mass. 223, 78 N. E. 128. Logically followed, this would appear to eliminate the implied adoption which is in reality an application of the doctrine of estoppel.

Where, as in this case, there is no contract, but simply service performed and expenses incurred in the incorporation, before the corporation should be charged with their adoption they should be found to be of corporate benefit, reasonable in amount, and incurred under circumstances which show that they were not in fact, nor intended to be, mere gratuities.

The corporation has no choice in determining upon the acceptance of these, hence it cannot be held by retaining the benefits to have estopped itself from

denying its adoption of them and its liability to pay for them.

The acts and conduct from which the adoption by a corporation can be inferred, are those only which it may voluntarily accept or reject. In *Smith* v. *New Hartford Water Co.*, 73 Conn. 626, 630, 48 Atl. 754, expenses incident to the incorporation of the corporation were expressly recognized by the directors and stockholders, and notes in payment of these were issued by the directors with the approval of the stockholders. We held that "those expenses having been incurred for the benefit of the defendant and the benefit having been accepted, it might lawfully undertake the obligation to pay them." That all of the stockholders approved did not change the situation from a legal standpoint; the directors had authority to adopt the contract. The express adoption by the directors appears to have been supplemented by the inference following the benefits received.

In the case before us there is the vote of the directors which, if within their authority, would be an express adoption without the cumulative force of the implied adoption. The conditions which we attach to the adoption by implication, leave no place for the claim that the recognition of promoters' services and expenses, incurred in the incorporation, exposes the rights and property of stockholders to the danger of spoliation through the machinations of promoters. *Maryland Apartment House Co.* v. *Glenn*, 108 Md. 377, 389, 70 Atl. 216; *Royal Casualty Co.* v. *Puller*, 194 Mo. App. 588, 186 S. W. 1099; *Schreyer* v. *Turner Flouring Co.*, 29 Or. 1, 43 Pac. 719.

The vote of adoption by the directors of the plaintiff, had it been within their authority, would have been a recognition that the defendant's services and expenses were a just claim against the plaintiff corporation.

These the court has found to be of the value of $2,500, and this sum would thus have become a debt of the corporation after this vote.

In the absence of statute or vote of the corporation, there is no valid reason why the corporation could not issue, in good faith and for value, its stock in payment of services rendered and expenses incurred for it.

The plaintiff claims that under § 12 of the Corporation Act (Public Acts of 1903, Chap. 194) the stock could only be issued for cash or its equivalent, and that if paid for otherwise than by cash this must be placed upon the record book of the corporation, and as there is no such record it must follow that the stock was issued for cash. That does not logically follow. The statute requires that the stock should be paid for in full when issued. It imposes the duty upon the majority of placing upon the record the payments of stock otherwise than by cash. It does not, upon the failure of the directors to perform this duty, raise a presumption that it was paid for in cash.

The vote of the stockholders, that no stock other than a specified amount should be issued except for cash, was obligatory upon the board of directors. They could not by their vote override this and issue stock in payment for services; and an adoption by the corporation could not be found from a vote the board of directors were without authority to pass.

But the institution of this action and its maintenance for nearly two years, must be taken to be the act of the corporation. And this action is one to recover "the par value of these fifty shares of stock," as the plaintiff says in its brief. It is an action to compel the payment of the subscription price of this stock. It thus recognizes the issue of this stock and sues to recover its subscription price. The corporation cannot now be permitted to claim that the issue is invalid. The

irregularity it might waive, and it has. And it took its action in full knowledge of the facts surrounding the issuance of the stock. Under these circumstances, as soon as this irregularity was waived by the bringing of this action, the adoption by the directors of this issue of stock in payment of services rendered and expenses incurred by the defendant became effective.

The rulings on evidence are controlled by the foregoing conclusions.

There is no error.

In this opinion the other judges concurred.