[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM
In early 1987 the named defendant, Richard Doyle, Bill Schultz and Francis Carpenter were contemplating the purchase of acreage in Plymouth, Connecticut, and the forming of a corporation to be known as Caty, Inc. to develop the same. The contemplated purchase price was $500,000. DiPrimio was to have a 50% interest in the project, Carpenter 25% and a corporation apparently controlled by Doyle was to have the remaining 25%. On April 23, 1987, DiPrimio executed a document in which he gave to "Jorge Garcia, for the sum of Twenty Thousand Dollars a twenty percent interest in my share of KATY CORP after the sum of Five Hundred and Fifty Thousand Dollars has been received. . . . Should the zoning board approve a total of twenty on (sic) building lots, Jorge will be able to purchase one of the lots for Ten Thousand Dollars." DiPrimio was the only one of the group who knew about this agreement. Garcia did pay $20,000 to DiPrimio. On December 29, 1987, a certificate of incorporation of Caty, Inc. was executed by Carpetner, Schultz, Doyle and DiPrimio as incorporated and it was filed with the Secretary of the State on the following day. In September, 1988 subdivision approval for twenty-four lots were sold generating $825,000 in sales prices. The least expensive lot sold for $64,000, the most expensive for $75,000 and the average price was $68,750. On January 3, 1989, the Board of Directors of Caty, Inc. adopted a vote authorizing DiPrimio to execute any and all documents necessary for sales, and all of the adjustment sheets on the sales between the above noted dates were signed by him. On September 28, 1989, Garcia wrote a letter to DiPrimio, not the corporation, attempting to exercise the option in the document of April 23, 1987 by purchase of lot 5 in the development. On November 7, 1989, an attorney for Garcia wrote a letter addressed to both DiPrimio and the corporation attempting to exercise that option by purchase of lot 17 for $10,000. The asking price for that lot at that time was $70,000.00. It was not until the letter of November 7 that the others involved in the corporation became aware of any agreement with Garcia. When they did, they inquired of DiPrimio as to what was going on and he that they should not worry as he had straightened everything out. On November 21, 1989, DiPrimio agreed to resign as an officer and director of Caty, Inc. and did so resign. He also agreed to sell all of his interest in the corporation to CT Page 6120 Schultz for $23,000 and Schultz was then elected President. On January 7, 1990, one and a half months after DiPrimio resigned and sold his interest, DiPrimio wrote a letter to Garcia. Typed at the top of the letter was "Caty, Inc." The letter described him as having the controlling interest in the development and it agreed to sell lot 17 to Garcia for $10,000 with closing of sale within thirty days. Under his signature is typed "President of Caty, Inc." No lot was ever sold to Garcia at any price and DiPrimio never transferred to him any portion of this interest and never returned the $20,000. No portion of any money paid by Garcia to DiPrimio was ever turned over to the corporation.
This action was brought by writ served on February 13, 1990 and in the first count seeks specific performance against both DiPrimio and Caty, Inc. for conveyance of lot 17 to Garcia for $10,000 and in the alternative for damages. The remaining counts are directed against DiPrimio alone. In the second count, it alleges violation of the banking laws, Connecticut General Statute 36-471 et seq., in that the April 23, 1987 document constituted a sale of securities and contained untrue, misleading and incomplete statements made by DiPrimio and it seeks recovery of the $20,000 paid plus interest and attorney's fees under 36-498. In the third count, it is alleged that the actions of DiPrimio were unfair, deceptive and unscrupulous under the Unfair Trade Practices Act, 42-110a et seq. and seeks actual and punitive damages, interest and attorney's fees. In the fourth count, it is alleged that DiPrimio sold all of his interest in the corporation to a third party thereby converting Garcia's 20% interest; and he seeks treble damages under 52-564.
A subsequently formed corporation may adopt contracts previously executed by its promoters. I can find no acts by the corporation which could constitute adoption. DiPrimio was the only one of the group who had any knowledge of the April 23, 1987 document until the letter of November 7, 1989, and at that time he told the others not to worry about it as he had straightened everything out. Further, to adopt a contract made by a promoter on behalf of a corporation subsequently incorporated, "it must be within its corporate powers, for its benefit, be reasonable, and good faith must have surrounded its making and adoption." United German Silver Co. v. Bronson, 92 Conn. 266, 270. It would be ridiculous to hold that an agreement to sell a lot for $10,000 while the average selling price of lots was $68,750 would benefit the corporation or be reasonable. Obviously, DiPrimio's letter of January 7, 1990, after he had resigned and sold his interest in the development, is a nullity. As the corporation never adopted the agreement, it cannot be bound by it and therefore no purpose would be served by discussion of the special defenses of the statute of frauds and the statute of limitations as to specific performance. Clearly judgment must enter for Caty, Inc. on the CT Page 6121 first count.
As DiPrimio has no proprietory interest in any of the land in the development, a judgment of specific performance against him would serve no purpose. The document of April 23, 1987 contained two separate and distinct promises; one, to convey to Garcia for the price of $20,000, 20% of DiPrimio's interest in the enterprise, and two, to sell a lot for $10,000. As to the first promise, DiPrimio received the $20,000 and not only did not convey the interest as promised, but also has made it impossible to do so by selling all of his interest to a third party, so Garcia is clearly entitled to have his $20,000 returned. Ten Thousand Dollars was paid on April 24, 1987, so he is entitled to interest on that amount at 8% per annum from that date, I find as a fact that the other $10,000 was paid, but there is no evidence as to the date. It is reasonable, however, to infer that it must have been paid by the time of incorporation, so he is entitled to interest on that amount from December 30, 1987. As to the second promise in that document, it is clearly governed by the Statute of Frauds as it is impossible to determine from its wording what is to be sold, so Garcia cannot be awarded damages for the difference between the $10,000 and the actual sales price.
As to the second count, I cannot find that the plaintiff has borne his burden of proof that as of April 23, 1987 any statements in that document were untrue, misleading and incomplete. DiPrimio did subsequently welsh on his promise but that is not enough to trigger off a violation of the law as to sale of securities.
As to the third count, the subsequent actions by DiPrimio were clearly unfair, deceptive and unscrupulous so Garcia is entitled to punitive damages, which I assess at $20,000, and attorney's fees; and I find $10,000 to be reasonable.
As to the fourth count, 20% of the $23,000 DiPrimio received for his interest is $4,600. As I am awarding Garcia much more than that, an award also under this count would constitute double payment.
Judgment may enter for the defendant, Caty, Inc. and for the plaintiff, Garcia, against the defendant, DiPrimio for $20,000 actual damages, $20,000 punitive damages, interest as above noted, and an attorney's fee of $10,000.
J. HEALEY, STATE TRIAL REFEREE