BRADNER, Respondent, v. ROCKDALE POWDER COMPANY, Appellant.

St. Louis Court of Appeals, November 28, 1905.

1. **CONTRACT OF EMPLOYMENT: Measure of Damages.** In an action for breach of a contract of employment, where the employer repudiated the contract and the employee was unable to find other employment, the measure of his damages was the salary for the period of his employment under the contract, less such sum as he might by reasonable diligence have been able to earn during the period.

2. **————: Beginning of Employment: Reasonable Time.** Where an employer and employee enter into a written contract whereby the employee should receive a different compensation after certain conditions should be performed by the employer, no date being fixed for the beginning of the employment under the new arrangement, it will be presumed that the conditions were to be performed, and the employment under the new arrangement should begin, within a reasonable time.

3. **————: ————: ————.** What would be a reasonable time in such case, is ordinarily a question for the jury. But where both parties treated the first contract of the employment as still in force, and after the lapse of a reasonable time the employer repudiated the new contract, the date of the repudiation of the new contract was properly treated as the beginning of the time of employment for the purpose of assessing the employee's damages for the breach.

4. **PRACTICE: Verdict for Right Party: Reviewing Errors.** Where the verdict in the trial court is unquestionably for the right party, the appellate court will not consider errors in instructions to the jury.

5. **CONTRACT OF EMPLOYMENT: Quantum Meruit.** Where an employee, employed to sell the merchandise of the employer on commission, rendered other service at the request of his employer outside of his regular employment, he was entitled to a reasonable compensation for such service.

6. **————: ————: Proof of Value of Services.** The value of services rendered by an agent in seeking and purchasing a suitable site for the storage of his employer's goods is not a matter of such common knowledge that testimony in that regard may be dispensed with. In an action for compensation for such services the agent cannot recover without proof of its reasonable value.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

REVERSED AND REMANDED (*with directions*).

*Eugene W. Miller* for appellant.

(1) Instruction No. 2 given for the plaintiff leaves the construction of the written contract to the jury, and is indefinite and misleading, in that it directs the jury to deduct from the "aggregate contract price" of plaintiff's services the sums which he might still earn previous to June 15, 1905. It therefore leads the jury to believe that the defendant agreed to pay plaintiff for his services until June 15, 1905, whereas the agreement to pay for these services continues to April 12, 1904, only. The court should have given instruction No. 13 offered by the defendant. The language of a contract should be given its usual and ordinary meaning. Fruin v. Railroad, 89 Mo. App. 397; Goode v. St. Louis, 113 Mo. 257; Lovelace v. Travelers Protective Assn., 126 Mo. 104. In other written contracts when a period or space of time is limited for the performance of an act, but when the period or space of time is to begin to run is not expressly given, the law presumes it to run from the date of the instrument. Blake v. Crowninshield, 9 N. H. 304; Keyes v. Dearborn, 12 N. H. 52; Wilson v. Bicknell, 170 Mass. 259; 28 Eng. and Am. Ency. Law, page 216.

(2) Plaintiff cannot recover the reasonable value of his services in selecting suitable sites as he alleges unless he proves not only the extent and amount of such services, but also their reasonable value, neither can he recover for expenses incurred in commissions due the expert real estate agent unless he proves the rate of this commission and the value of the property upon which it is to be assessed. Sayer v. Craven, 107 Mo. App. 407; Cobb v. Railway, 149 Mo. 609; Slaughter v. Railroad, 116 Mo. 269; Smith v. Railroad, 108 Mo. 243; Duke v.

Railroad, 99 Mo. 347; Kaiser v. Transit Co., 108 Mo. App. 711; Garven v. Railway, 100 Mo. App. 617; Staetzle v. Sweringer, 96 Mo. App. 594; Haworth v. Railway, 94 Mo. App. 215; Siegel v. Howard, 13 Mo. App. 588; Miller v. Bryden, 34 Mo. App. 602; Mannerberg v. Railway, 62 Mo. App. 563; Culberson v. Railway, 50 Mo. App. 556; Rhodes v. City of Nevada, 47 Mo. App. 499; Morton v. Manwell, 18 Mo. App. 176; Bushmann v. Bray, 68 Mo. App. 8; McDermott v. Judy's Admr., 67 Mo. App. 642. (3) The nature and value of the services performed by plaintiff and the real estate agent in respect to said sites are not of such common and universal knowledge that the jury could be presumed to be informed thereupon even to an approximate degree of certainty.

*Taylor R. Young, Frank H. Haskins* and *Hugh D. McCorkle* for respondent.

The date of a contract is that part which purports to specify the time when it was executed. It has no bearing upon the question of the time when the writing is to become operative unless reference is made to it, or the instrument is silent upon that proposition. It may be contradicted by parol evidence. 8 Am. and Eng. Ency. of Law (2 Ed.) pp. 727, 733, and note; Saunders v. Blythe, 112 Mo. 1. The judgment is clearly for the right party. Bassett v. Glover, 31 Mo. App. 150; Williams v. Mitchel, 112 Mo. 300; Phillips v. Bachelde, 47 Mo. App. 52.

STATEMENT.—Plaintiff is a man of experience in the business of selling dynamite and powder, and defendant is a corporation engaged in the manufacture of those articles in the city of York, Pennsylvania. For ten years previous to the making of the contract in question, plaintiff had been engaged in selling dynamite and powder at different points in the west; most of the time in St. Louis. He had represented several powder com-

panies, and in December, 1903, entered into a contract with the defendant company to represent it as salesman in the territory west of the Mississippi river, with his headquarters in St. Louis. This contract was made with the defendant throu_h its secretary, W. J. Koller, who, from plaintiff's testimony and other evidence in the case, seems to have had full authority to act for the defendant. In fact, he appears to have been defendant's general manager and to have taken the principal part in the transaction of its business. In the spring of 1904, plaintiff went to York to induce the defendant company to establish a powder factory and magazine at or near St. Louis, and put him in charge of it on a salary. The result of his effort was the following contract:

"Articles of agreement made and concluded in duplicate this 12th day of April, A. D. 1904, by and between H. T. Bradner, of St. Louis, Missouri, of the first part and the Rockdale Powder Company, a corporation existing under the laws of the State of Delaware, of the second part, witnesseth:

"That the said H. T. Bradner, party of the first part, agrees to and with the said party of the second part that he will act as agent to sell and handle the goods manufactured by the said party of the second part under and subject to such prices, terms and conditions of sale as the said party of the second part may, from time to time, designate, and that he will use all due precaution and energy for the benefit of the said party of the second part in the sale of their goods and commodities; that he will take charge of and manage a magazine to be erected at or near East St. Louis, Illinois, and will keep a strict account and render strict accounts of all goods sent by the said party of the second part to said magazine or under his control. He will also render to the said party of the second part true and faithful accounts of all sales and goods under his control whenever so requested by the said party of the second part.

"That said party of the second part, for and in con-

sideration of the foregoing stipulations and agreements, agrees to pay the said H. T. Bradner the sum of twelve hundred dollars per annum in monthly payments of one hundred dollars and expenses, traveling and otherwise, incurred with approval of second party, and if his sales for which they receive payment exceed during any period forty thousand dollars, they shall pay to him, the said party of the first part, a commission of five per cent in addition to the said twelve hundred dollars per annum on all excess sales over forty thousand dollars.

"They further agree that they will erect and maintain and stock a magazine at or near East St. Louis, Illinois, as soon as they can procure a suitable site, in which magazine they will carry dynamite and black powder.

"The said party of the first part hereby agrees to be responsible for the safe-keeping and care of said dynamite and black powder or other explosive material (except explosion or robbery) which may be therein stored by the said party of the second part, and will do all he can to protect the same from explosion or robbery.

"It is further hereby mutually agreed and stipulated that the payment under the foregoing agreement by the second party to the first party shall commence when a suitable site for said magazine is procured and this magazine erected.

"This agreement to last for one year only, unless changed by agreement in writing of both parties.

"In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written.

    "H. T. Bradner,   (Seal)
     "Rockdale Powder Co.,
 (Seal)    "By Henry Warber, Pres.
"Witness: F. W. Seeman."

Plaintiff's testimony, and it was corroborated by the correspondence between him and the defendant, is that the secretary (Koller) requested him to look over

the country in the vicinity of St. Louis, and select a suitable site for the location of a magazine. Plaintiff called to his assistance in the matter of selecting a suitable site, a man who was in the real estate business and hoped to make a commission in the purchase of the property that might be selected. Plaintiff spent about three weeks hunting a suitable site and finally selected a piece of land, consisting of ten acres, with a barn on it, about five miles from East St. Louis, in Illinois. He wrote the defendant' company of his selection, stating the price of the land and receiving an answer approving his work. The site was never purchased nor a factory or magazine erected. It should be stated that the erection of such a magazine as was contemplated would have taken only a few days, as it was not to cost more than eighty or one hundred dollars. From the time of plaintiff's return from York in April, to the middle of June, an extensive correspondence passed between him and the defendant, relating to the establishment of a magazine and factory, and the opening of business under the written contract of April 12th; the defendant always writing as if it entertained a settled purpose to establish the magazine and in all respects carry out its contract with the plaintiff. This correspondence is too voluminous to be copied, nor is it important to do so. Its entire tenor is that the defendant recognized as a binding obligation, the agreement entered into with the plaintiff in April, and intended to comply with it; but was delayed by momentous transactions pending in the eastern States. Defendant elicited from plaintiff the names of customers of his who were in the habit of making purchases of powder and expressed gratification at the prospect of dealing with such buyers. This was done in the course of the correspondence, in which both parties discussed plans for the conduct of the business they expected to do pursuant to the contract of April 12th, the plaintiff relying, and having the right to rely, as far as anything in the correspondence showed, on the good faith of the

defendant and its purpose to live up to the agreement. After the site had been selected, plaintiff frequently requested Koller to come west to look at it and the latter put plaintiff off from time to time with excuses; chiefly that extensive financial operations were occupying the time and attention of himself and defendant's other officers. Such was the posture of affairs, as shown on the face of the correspondence, until June 15, 1904, on which date the secretary wrote plaintiff a letter notifying him that defendant's board of directors, at a meeting held on June 14th, had decided to rent the property which the plaintiff had mentioned as a suitable site, build a magazine not to cost more than eighty or ninety dollars, *and place the business on a commission basis, allowing plaintiff a commission of ten per cent on a designated part of the business and five per cent on the remainder.* This action contemplated, of course, a complete abandonment of the written contract between the parties and was not agreed to by plaintiff, whose main purpose in procuring the contract was to obtain a salaried compensation, instead of depending entirely on commissions.

The present action was instituted to recover the damages sustained by plaintiff on account of defendant's breach of the written contract and also reasonable compensation for the work done by plaintiff in selecting a site for the magazine. The petition is in two counts; the first on the written contract and the second *quantum meruit* for the work of selecting the site. Both counts were answered by general denials, but to the first a special plea was interposed, alleging that during the time plaintiff was to be paid under the first contract, he had earned, or by reasonable diligence, could have earned, money more than equal to the damages alleged to have been sustained by defendant's breach. The trial resulted in a verdict for plaintiff in the sum of $1,200 on the first count and $150 on the second. Judgment was entered accordingly and defendant appealed.

GOODE, J. (after stating the facts).—No defense was shown to plaintiff's cause of action arising from the breach of the contract of April 12, 1904. The defendant kept plaintiff waiting until June 15th for the erection of the magazine and the commencement of business under the contract, and then informed him that the directors had decided to put his employment on a commission basis; that is, in effect, had decided to repudiate the contract. Why this was done the evidence fails to disclose; but probably it was because defendant had made other business arrangements, or found its finances in such a condition that its officers thought its interests would not be promoted by paying plaintiff a salary, as it had agreed to do. Plaintiff had been ready to enter on the performance of his duties at any time. After he was notified of the decision of the directors he made diligent efforts to secure employment. At first he applied to various concerns engaged in the powder business, with which he was familiar; and on failing to get work from them, applied to companies engaged in other lines of business. His efforts to find employment proved futile. There being nothing to show plaintiff's loss because of defendant's breach was less than he would have received had the contract been performed, the measure of his damages was the salary for the period of his employment under the contract, that is, one year, less such sums as the jury might find from the evidence plaintiff by reasonable diligence, would be able to earn during the remainder of the year of his employment. [Boland v. Quarry Co., 127 Mo. 520, 30 S. W. 151.] The jury was instructed in accordance with this rule and returned a verdict for the amount of his salary for a year from June 15, 1904. Defendant insists that, according to the contract, his salary was to begin on the date of the contract, that is, April 12, 1904; whereas the plaintiff insists that it was to begin when the magazine was erected. No doubt the latter position is correct; for the contract said in plain words that payment to plaintiff should commence when

a suitable site was procured and the magazine erected. How could business begin under the contract until the very means, and essential condition, of carrying it on had been provided? Now the point about when plaintiff's salary began is material to the action on the first count in some respects. The amount to be allowed as damages was to be reduced by subtracting whatever the jury believed plaintiff, by diligence, might have earned during the year of his salaried employment. If the year began April 12th, they might have found differently on that inquiry; and, moreover, his work of selecting a site would be covered by his salary, as it would not be if his salary began June 15th. Again, if it was an open question for the jury to say when it began and they were bound to decide on neither April 12th nor June 15th, but might fix such date as afforded defendant a reasonable time to build a magazine, both their finding on the issue of whether plaintiff could have procured employment elsewhere for part of his salaried year, and their finding on his right to pay for choosing a magazine site, would hinge on the date found to be the end of a reasonable time for the erection of the magazine; for, by the contract, the salary would begin on said date. Did the court do right in making the salaried year begin June 15th, instead of leaving it to the jury to say when in reason, the magazine should have been ready, and making the salary begin then? As no period was fixed for the building of the magazine and the opening of business, the law will hold that a reasonable time was intended. [Randolph v. Frick, 57 Mo. App. 400.] In further refutation of the argument that the salary was to begin on the date of the contract, we remark that the parties did not so construe it. Plaintiff was paid no salary from April 12 when the contract was made, until June 15, when it was repudiated, though the instrument provided for monthly payments; and meanwhile he was paid commissions—and by accepting them conceded, in effect, that his first contract was still in force.

Moreover, the correspondence shows Bradner tried to hurry performance by defendant in order to have his salary begin, and that, as the matter was delayed, Bradner telegraphed defendant on May 2d, asking if defendant would start the salary from the date of the contract and allow him fifty dollars for expenses. The contract provided that he should receive his traveling expenses. Defendant promised to answer this message when its president returned; but did not answer it. We have no doubt that the employment of plaintiff under the instrument of April 12th did not begin on that date, and none that it was to begin in a reasonable time thereafter— a time reasonable for the selection of a magazine site and the erection of the building. What was a reasonable interval in which to do those things, would have been a question to propound to the jury but for the conduct of the parties. The correspondence between them to June 15th shows that the plaintiff insisted defendant had broken the contract by failing to act more promptly. That is, did not insist that a reasonable time for performance by defendant had already lapsed. He was urgent that performance begin, but was patient, too; and neither asserted a breach by defendant, nor appears to have suspected its good faith. In view of these facts the plaintiff had no cause of action on the theory that a breach occurred prior to June 15th, when defendant repudiated the employment. Until that date defendant itself professed an intention to go forward with the contract and induced plaintiff to believe it would; meanwhile accepting business from him under the existing commission contract and paying him the commission earned by the business, thus showing it considered the new contract not to be in operation. It, therefore, conclusively appears that to June 15th both parties treated the commission contract as in force and the new one as in abeyance. In view of the conduct of the parties themselves, we hold that in this action for breach of the contract for

salaried service, the salary was rightly treated as beginning at the date of defendant's repudiation of the agreement. If this ruling is correct there can be no question that the verdict on the first count was for the right party and for the right amount; so it is needless to enter on a discussion regarding the propriety of the instructions given on that count.

Treating plaintiff's salary as running one year from June 15, 1904, when the defendant repudiated the contract, instead of one year from April 12, 1904, the date of the contract, might bear on his recovery on the second count, wherein he asked judgment for the reasonable value of work performed in selecting a site for the proposed magazine. The position taken by the defendant is that plaintiff's employment began on April 12th and, hence his services in selecting the site, as they were rendered between April 12th and June 15th, were covered by the monthly salary accruing to him under the contract. In other words, that he was acting under his contract in selecting the site as much as he would have been in selling powder after the magazine was built. It is to be remembered that the plaintiff was already working for the defendant under a contract made in December, 1903, and that this employment went on after the written contract of April 12, 1904, was made. Plaintiff still continued to sell powder on commission for the defendant, awaiting the erection of the magazine and the commencement of his salary. The evidence shows that he made one considerable sale in the interval; a sale of some two thousand dollars worth of powder to the Mine La Motte Company. It is palpable that the written contract meant that plaintiff's salaried employment was to begin when a magazine was erected and a new business started. No time was specified for the erection of the magazine and, therefore, as said, the law will presume it was to be erected in a reasonable time. Now the selection of a site was a work wholly independent of plaintiff's duty to sell on commission under the

contract he was already operating under, the December contract. It was an independent service which, as it occupied him for three weeks, probably interfered with his sales and diminished his commissions. The entire evidence, both his own testimony and the correspondence, goes to show he was expected by the defendant to select a site. Whether he was to do it gratuitously, for the purpose of expediting the commencement of his salary, or for pay, was a fact to be found by the jury and was left to their decision. There was evidence justifying the verdict that he did the work in expectation of payment and that the defendant expected to pay for it. It was proper to remit the question to the jury and on the appeal the point of moment is the soundness of the trial court's rulings on the instructions requested. Those requested by the defendant were so numerous and many of them so superfluous, that the court would have been justified in refusing them all. We have said that because the verdict on the first count was plainly right it is unnecessary to examine the instructions with a view to determine whether the issues on that count were properly submitted. This is true, too, for another reason, in respect of the finding on the second count. No proof was adduced to show the reasonable value of the services plaintiff rendered in selecting the site and, therefore, the verdict on the second count cannot stand. The lack of evidence is practically conceded by plaintiff's counsel; but they insist that the value of the service came within the common knowledge of ordinary men and the jury might settle it without evidence to aid them. In support of this position we are cited to the decision in Sayers v. Graven, 107 Mo. App. 407, 81 S. W. 473. That decision rests on the decision of the Supreme Court in Murray v. Railroad, 101 Mo. 236, 13 S. W. 817, in which it was ruled that, without testimony, a jury might fix the reasonable value of the services of a nurse. But the latter case was overruled as to the particular point

in Cobb v. Railroad, 149 Mo. 609, 630, 50 S. W. 894. In our opinion the reasonable value of such services as plaintiff rendered is not a matter of such common knowledge that testimony on the subject may be dispensed with. It was very easy to procure testimony on the point and some ought to have been introduced. The very essence of a case *quantum meruit* is the reasonable value of the work or property in dispute; and when the case is such that the inquiry as to the value is susceptible of proof by testimony, proof must be made. [Mabrey v. Gravel Road Co., 92 Mo. App. 596.]

The judgment is reversed and the cause remanded, with directions to allow the verdict to stand on the first count; to retry the issues on the second count and after verdict thereon, to enter judgment on both counts in accordance with the findings. All concur.