N. L. VAN ZANDT, Respondent, v. ST. LOUIS
WHOLESALE GROCER COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted November 13, 1916.
Opinion Filed December 30, 1916.

1. **PLEADING: Sufficiency of Petition: Manner of Questioning.** De-
fects in a petition are not ordinarily reached by a motion for a
new trial, but are reached either by an objection to the introduc-
tion of any evidence, by demurrer, or motion in arrest, and, failing
these, may be reached and raised, in some cases, even for the
first time, in the appellate court.

2. **CORPORATIONS: Promotion Work: Assumption of Liability by
Corporation: Sufficiency of Petition.** A petition in *quantum meruit*
alleged that defendant corporation was a domestic corporation
engaged in the wholesale grocery business; that, prior to its
organization, the individual defendants were seeking to organize,
among retail grocers, a corporation to engage in the wholesale
grocery business on the co-operative plan; that, at their special
request, plaintiff undertook to organize and promote defendant
corporation among retail grocers, and to explain the plan to them
and to secure their patronage and subscriptions to its stock, and
that he attended to its preliminary organization, so that it was
incorporated and that it thereafter engaged in the wholesale gro-
cery business, the individual defendants being its officers; that
defendant corporation approved and accepted plaintiff's services

and assumed liability therefor, and promised to pay him the reasonable value of his services and expenses, which is $10,000, but that defendants now refuse to pay plaintiff that sum, or any part thereof, except $1700 heretofore paid to him by them. *Held*, that the petition states a cause of action.

3. ——: ——: ——: Instructions. In such case, the court instructed the jury, at the instance of plaintiff, that if they found there was an implied promise by the promoters, by acceptance of the services of plaintiff in the organization of the corporation, and if they found that the corporation accepted the organization and promotion work and service in its behalf and that plaintiff continued soliciting subscriptions to its stock and completed its organization, defendants were liable for the reasonable value of such services, not exceeding $10,000, and his expenses, deducting therefrom $1700 already paid him. *Held*, that, in view of the fact that the evidence was conflicting as to what the $1700 was paid for, plaintiff claiming that it was a payment on account, while the evidence for defendants tended to show that it was paid as commission on the sales of stock made by plaintiff and as full payment for his services, the instruction was erroneous, as assuming that plaintiff's version of the transaction was correct. *Held, further*, that the instruction was erroneous for allowing a recovery for expenses incurred by plaintiff, in the absence of any evidence tending to prove the amount of such expenses, and when, in fact, plaintiff admitted that his expenses had been paid. *Held, further*, that, in view of the fact that the instruction purported to cover the whole case, it was erroneous, as entirely omitting any reference to the defenses pleaded and in evidence.

4. **INSTRUCTIONS: Assuming Controverted Facts.** An instruction which assumes a controverted fact to be true is erroneous.

5. ——: **Submitting Theory not Proved.** An instruction which submits facts that are not proved is erroneous.

6. ——: **Failure to Submit Defenses.** An instruction for plaintiff which purports to cover the whole case is erroneous, if it omits any reference to the defenses pleaded and in evidence.

7. **EVIDENCE: Burden of Proof.** A party having the *onus* must produce substantial evidence tending to establish his claim, in order to warrant a submission of the case to the jury; and the duty to establish the same by a preponderance of the evidence also rests upon him, the degree of preponderance, however, being immaterial.

8. **CORPORATIONS: Promotion Work: Authority of Promoters.** In an action on a *quantum meruit* against a corporation, for services in promoting and organizing the corporation and selling its stock, *held* that the parties with whom plaintiff claimed to have made his original contract for services, who were holding themselves

196 Mo. App.—41

out as officers of the corporation before it was organized, were no more the corporation than was plaintiff himself, but they were all mere promoters.

9. ——: ——: *Liability of Corporation.* As a general rule, a corporation is not liable for services rendered by a promoter, though there are cases holding that the promoter may recover for such services, where it appears that he expected to be compensated therefor, that the services were renered at the request of, or under contract with, the associate promoters, or a majority of them, and where the acts done were necessary to the organization and its objects and the corporation received and enjoyed the benefits.

10. **QUANTUM MERIUT:** Necessity of Proving Value of Services. · In an action on a *quantum meruit*, a recovery cannot be had unless plaintiff proves the reasonable value of the services sued for.

11. **CORPORATIONS:** Promotion Work: Implied Acceptance. A corporation does not, by the mere act of becoming a corporate body, accept the benefit of a promoter's services in obtaining subscriptions to its capital stock.

12. ——: ——: *Assumption of Liability.* In an action on a *quantum meruit* against a corporation, for services in promoting and organizing the corporation and selling its stock, *held* that plaintiff failed to prove the value of his services; that the promoters, who are alleged to have employed plaintiff, were not a majority of the promoters; that the testimony adduced by plaintiff was entirely too ·indefinite to constitute substantial testimony to the effect that such parties availed themselves of plaintiff's services with any sort of understanding that he was to receive compensation from the corporation, when organized; and that, after the corporation was organized, its directors refused to recognize or affirm plaintiff's claim; and hence it is *held* that plaintiff's evidence was insufficient to warrant submission of the case to the jury.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

REVERSED.

*Collins, Barker & Britton, Boaz B. Watkins* and *C. E. Kimball, Jr.* for appellant.

(1) The motion of defendant, St. Louis Wholesale Grocer Company, for a new trial on the ground that the second count of plaintiff's petition does not state facts

sufficient to constitute a cause of action, should have been sustained. New York & New Haven Railroad Co. v. Ketchum, 27 Conn. 179; 10 Cyc. 265; Thompson on Corporations (2 Ed.), sec. 88; Cushion Heel Shoe Co. v. Hartt, 103 N. E. (Sup. Ct. of Ind.), 1063; R. I. & St. L. Rd. Co. v. Sage, 65 Ill. 328; Hayward v. Lessen, 175 Mass. 320; Van Noy v. Ins. Co., 168 Mo. App. 287; Blackwell v. Adams, 28 Mo. App. 61; Davis v. Creamery Assn., 63 Mo. App. 477. (2) Promoters stand in a fiduciary relation toward a projected corporation. Brooker v. Trust Co., 254 Mo. 156; Yale Gas Stove Co. v. Wilcox, 25 L. R. A. 90; Hayward v. Lessen, 49 L. R. A. (Mass.) 725. (a) This relation extends to a corporation as a legal entity. South Joplin Land Company v. Case, 104 Mo. 572-578; Exter v. Sawyer, 140 Mo. 302; Chandler v. Bacon, 30 Fed. 538. (b) It extends also toward the stockholders in respect to their property right. Brooker v. Trust Co., 254 Mo. 156; Cushion Heel Shoe Co. v. Hartt, 103 N. E. 1063. (2) The law is well settled that contracts made for a projected corporation by its promoters, are not binding upon it. Van Noy v. Ins. Co., 168 Mo. App. 287; States ex rel v. Bank, 197 Mo. 574; Davis & Rankin v. Creamery Assn., 63 Mo. App. 477; Hill v. Gould, 129 Mo. 106. (3) There was no consideration for the alleged promise to pay for the services rendered by the promoter. Furniture Co. v. Crawford, 127 Mo. 364; Contracting Company v. Construction Company, 150 Mo. App. 505. (4) There is no allegation in the petition that plaintiff disclosed to prospective subscribers to stock that he was to receive any personal profit. Exter v. Sawyer, 146 Mo. 302; Garrett v. Kansas City Coal Mining Co., 113 Mo. 330; Brooker v. Trust Company, 254 Mo. 157; South Joplin Land Company v. Case. 104 Mo. 572-578; Pitts v. Steele Mercantile Co., 75 Mo. App. 231. (5) Defendant St. Louis Wholesale Grocer Company's demurrer to the evidence at the close of the plaintiff's case should have been sustained. (a) There was no evidence introduced to show that the services rendered by the paintiff were worth more than $1700. Bradner

v. Rockdale Powder Co., 115 Mo. App. 102. Also cited with approval in Woodward v. Donnell, 146 Mo. App. 119. (b) There was no evidence to show that the defendant, St. Louis Wholesale Grocer Company, contracted or agreed to pay a reasonable value for plaintiff's services, but proof to the contrary tends to show a contract for one-half of one per cent. of the gross sales of the defendant company during a period of five years, which constitute a variance between allegation and proof. (6) While the appellate court will not ordinarily disturb the verdict of the jury on the question of the weight of the evidence, it will not hesitate to do so when the verdict is not supported by the evidence. Lyons v. Corder, .253 Mo. 539, 561; Graney v. St. Louis, I. M. & S. Ry. Co., 157 Mo. 222; Powell v. Mo. Pac. Ry. Co., 76 Mo. 84; McFarland v. Accident Assn., 124 Mo. 222; O'Donnell v. Railroad, 152 Mo. App. 614; Fitzjohn v. Transit Co., 183 Mo. 78; Knisely v. Leathe, 178 S. W. 461; College v. Dockery, 241 Mo. 522. (7) The court erred in granting plaintiff's instruction number two; this for the reason that instruction assumes material and controverted facts. Comer v. Taylor, 82 Mo. 341. (a) The instruction unduly and improperly emphasizes the erroneous theory that the $1700 paid plaintiff was not paid for services and expenses, but for expenses alone or even a part payment for expenses. (b) The instruction ignores the pleading and uncontroverted evidence of the plaintiff himself, that his expenses were paid for in full and instructs the jury that they may find additional expenses as part of the plaintiff's damage. (c) The instruction ignores the defendant St. Louis Wholesale Grocer Company's defense and does not cover all the issues raised by the pleadings. Holmes v. Board of Trade of K. C., 81 Mo. App. 143; Moyes v. Railroad Company, ——Mo.——(not yet officially reported).

*Emerson E. Schnepp* for respondent.

(1) When a number of persons not incorporated, but associated for a common object, intending to pro-

cure a charter, authorizes acts to be done in further-
ance of their object by one of their number or a third
person, with the understanding that he should be com-
pensated, if such acts were necessary to the organiza-
tion and its objects, and are accepted by the corpora-
tion and the benefits enjoyed, they must be taken *cum
onere* and be compensated for. Taussig v. St. Louis &
Kirkwood Ry. Co., 166 Mo. 28, 38; Railroad v. Christy,
79 Pa. St. 54, 59; Girard v. Case Bros. Cutlery Co.,
225 Penn. St. 327, 333; Farmers' Bank of Vine Grove
v. Smith, 105 Ky. 816, 820; Low v. Railroad, 45 N. H.
377-378; Railroad v. Perry, 37 Ark. 164, 187; Hall v.
Vt. & Mass. R. Co., 28 Vt. 401, 407; Thompson on Cor-
porations, (2 Ed.), secs. 89, 92; Taussig v. Railroad,
186 Mo. 269, 276, 277. (2) The assignment of error that
there is no evidence to show that plaintiff's services
were worth more than $1700 is without merit. Seyers
v. Craven, 107 Mo. App. 407; 40 Cyc. p. 2855; Ferris
v. Edmondson, 124 Mo. App. 94; Alden v. Gross, 25
Mo. App. 123; Floerke v. Teuscher Distilling Co., 20
Mo. App. 76. (3.) There is no error in plaintiff's
instruction No. 2, and this form has been approved by
the Supreme Court. Taussig v. Railroad, 186 Mo. 269,
277.

REYNOLDS, P. J.—Plaintiff commenced his action
against the defendant and three individuals.

The petition contained two counts, the first count
sounding in damages for breach of an express contract
of employment. As there was a verdict and judgment
for the defendant on that count, and plaintiff has not
appealed, it is unnecessary to set out that count in full,
but we will hereafter have occasion to refer to it.

The second count avers that the defendant St. Louis
Wholesale Grocer Company, is a corporation organized
and existing under and by virtue of the laws of this
State, engaged in the wholesale grocery business; that
on January 1, 1911, and thereafter, the defendants Kelly,
Lukenbill and Vandeloecht were seeking to organize
among retail grocers a corporation on the co-operative

plan for the purpose of engaging in the wholesale grocery business in the city of St. Louis, to be known as the St. Louis Wholesale Grocer Company; that at the special instance and request of the defendant, plaintiff undertook the work of organizing and promoting that company among the retail grocers of St. Louis and the surrounding country of Illinois and Missouri; that beginning on or about January 1, 1912, and at the special instance and request of defendants (meaning the individual defendants), plaintiff began to and did visit the retail grocers in St. Louis, throughout central and southern Illinois, eastern and southern Missouri, and all other territory contiguous to St. Louis; that he explained the co-operative plan of the proposed company to the retail grocers, secured their patronage and good will and solicited and procured their subscriptions to stock in the company defendant, attended the preliminary organization and meetings of that company, frequently consulted with and advised the officers thereof, of which preliminary organization the defendant Kelly was president, defendant Lukenbill secretary, and defendant Vandeloecht treasurer, and that plaintiff did all things needed and necessary for the complete organization of the corporation, so that in February, 1912, by reason of the work and services of plaintiff as above set out, the St. Louis Wholesale Grocer Company was incorporated under the laws of Missouri with a capital stock of $50,-000, one-half fully paid, and at once engaged in the wholesale grocery business in the city of St. Louis, and at the time of the institution of this action, was and is engaged in that business. It is further averred that the defendant Kelly was and is the president of the corporation, and the defendant Vandeloecht was and is its treasurer, and that the defendant Lukenbill and the two individual defendants above named, were and are three members of its board of directors. It is further averred that immediately after its organization, the St. Louis Wholesale Grocer Company, hereafter for brevity called the corporation or company defendant, "approved of and accepted all the work and services of plaintiff

in the promotion and organization of said corporation as aforesaid, assumed all liability therefor, and the payment to plaintiff of the reasonable value thereof; that thereafter under the directions and approval of defendant corporation, plaintiff continued the work of soliciting and procuring subscriptions for the capital stock of said company as aforesaid until about May 7, 1912." Plaintiff then avers "that he devoted all of his time from January 1, 1911, to about May 7, 1912, and his best efforts to the aforesaid work; that he has paid all his expenses of every kind during said time; that defendants promised to pay him the reasonable value of said services so performed as aforesaid, and his expenses, which is $10,000," but that defendants now refuse to pay plaintiff that sum or any part thereof except $1700 heretofore paid to him by them. Judgment is demanded in the sum of $8300 with costs.

The defendant corporation, answering this second count of the petition, admits that the defendant, at the date of the filing of the petition in the case, was a corporation organized and incorporated and with the capital stock averred; admits that Kelly was its president, Vandeloecht its treasurer, and Kelly, Vandeloecht and Lukenbill, three members of its board of directors immediately after its incorporation; admits that plaintiff received $1700, but denies that that sum was received by plaintiff in the manner or pursuant to the contract or agreement, as alleged in plaintiff's petition, but alleges that that sum was paid to and accepted by plaintiff in full for all services, if any, rendered by plaintiff to the defendant corporation or to the other defendants, and in full for any and all matters relating in any way to any and every understanding or agreement, if any, which plaintiff might have had with the defendants Kelly, Lukenbill and Vandeloecht, or with the defendant corporation.

As a further answer and defense to this second count of the petition, the defendant corporation says that it believes, and therefore alleges as a fact, that plaintiff had no such agreement with the defendants

Kelly, Lukenbill and Vandeloecht as in plaintiff's second count of his petition is alleged, and this defendant specifically denies that immediately after its incorporation, or at any other time, it approved, accepted and assumed liability, or any liability for and payment to plaintiff under the alleged agreement set out in the petition, or under any other agreement. The defendant corporation further specifically denies that after its incorporation, plaintiff worked for it in soliciting subscriptions for its capital stock under the terms of the alleged contract or agreement.

For further answer and defense to this second count, the corporation defendant alleges that there was no consideration to support the alleged approval, acceptance and assumption of all or any liability by this corporation defendant to plaintiff for and on account of the alleged agreement set out by plaintiff, specifically denying that this defendant approved, accepted or assumed any liability on account of the alleged contract or agreement, and avers that the alleged approval, acceptance and assumption is void and of no binding effect.

The defendant corporation further avers that plaintiff has been fully paid for any and all alleged services and expenses, alleged and set out in his petition, and that this defendant is in no way indebted to plaintiff, specifically denying that any services were rendered or expenses incurred by plaintiff under the alleged contract or agreement, and denying that there was such a contract or agreement. Then follows a general denial of all and singular the other allegations in the petition.

There was a trial before the court and a jury. We will notice the evidence, as far as necessary, hereafter. At the close of the plaintiff's evidence in chief and again at the close of all the evidence, the defendant interposed demurrers, which were overruled. There was a verdict in favor of all the defendants on the first count of the petition, as before noted, and in favor of the individual defendants, but against the defendant St. Louis Wholesale Grocer Company for $2000 on the second

count. Judgment followed accordingly, and the cor-
poration defendant filing its motion for a new trial, as
also one in arrest, and these being overruled and ex-
ceptions saved, the Wholesale Grocer Company has duly
appealed.

There are three specifications of error made by the
learned counsel for appellant, these again subdivided.

Under the first specification of error an attack is
made on the second count of the petition, which attack
may be summarized as urging that that count, by reason
of omission of various averments, fails to state a cause
of action, and it is urged that for this reason the motion
for a new trial should have been sustained. We might
dispose of this by saying that defects in a pleading are
not ordinarily reached by a motion for new trial. They
are reached either by objection to receipt of any evi-
dence, or by demurrer, or by motion in arrest. Failing
these, they may even be reached and raised, in some
cases, even for the first time in the appellate court. But,
considering this point as if properly made, we think this
second count of the petition not obnoxious to any of the
objections made to it. It does state a cause of action.

The second assignment or specification of error is
that the demurrer to the evidence, interposed by the de-
fendant grocer company at the close of the case, should
have been sustained. However that may be, that de-
fendant did not stand on this demurrer but introduced
evidence of its own and plaintiff endeavored to meet
this by rebutting evidence. As, however, the defendant
demurred to the evidence at the close of the case and
raises it here, we may assume that the points made
under this second assignment are intended to cover the
issue raised by that demurrer and we will presently con-
sider it.

The third assignment of error is that the court erred
in giving plaintiff's instruction which was directed to
this second count of the petition. It is complained of
that instruction that it assumes material and controverted
facts, unduly and improperly emphasizes the erroneous
theory that the $1700 paid to plaintiff was not paid for

services and expenses but for expenses alone, or even a part payment for expenses; that it ignores the complete and uncontroverted evidence of plaintiff himself that his expenses were paid for in full, and instructs the jury that they may find additional expenses as part of the plaintiff's damage, and that it ignores the defenses of the Wholesale Grocer Company, and while purporting to cover the whole case, does not cover all the issues raised by the pleadings. That instruction is very long and it will serve no useful purpose to set it out in detail. It is to be said of it, however, that it is certainly open to the objection urged as to that part of it which covers the payment of the $1700. Referring to that part of the instruction here challenged, after telling the jury that if they found there was an implied promise by the promoters, by acceptance of the services of plaintiff in the organization of the company, it proceeds to instruct the jury that if they find that the corporation accepted the organization and promotion work and services in its behalf and that plaintiff continued the services of soliciting subscriptions for stock, ''fully completing the aforesaid organization of defendant corporation until on or about May 7, 1912, then all the defendants are liable to plaintiff for the reasonable value of the aforesaid organization and promotion services rendered by him, and you should assess his damages at such sum, not exceeding $10,000, as you may believe from the evidence such services were reasonably worth *and his expenses,* deducting therefrom $1,700 already paid him and adding thereto interest at six per cent. per annum from the date of the institution of this suit, September 20, 1912, to the present time.'' The words we have italicized are those particularly attacked.

The evidence as to what this $1700 was paid for may be said to be conflicting, it being claimed on the part of plaintiff that this $1700 was a general payment to him on account of services, while on the part of defendant the evidence tended to show that it was paid him as his commission on the sale of stock in the defendant corporation and that under the contract between plaintiff and the

defendant corporation or its promoters, plaintiff was to pay his own expenses as well as render his services for this $1700, that is he was to receive $8 out of every $25 collected on subscriptions in the city of St. Louis, and $10 on all such subscriptions received outside of St. Louis, and that the difference in these amounts, that is the difference between the eight and ten dollars made between the city and country work, was with the express purpose of covering expenses necessarily incurred outside of the city. In point of fact plaintiff himself testified that the eight and ten dollars he was to receive on stock subscriptions obtained by him were to cover his expenses, he however claiming that these amounts were not to cover his services, and that he had never rendered any account for expenses to either the promoters or to the company. Furthermore, plaintiff himself admitted that all his expenses have been paid. This part of the instruction was error. It is also erroneous in that there is no evidence even tending to prove what expenses plaintiff was put to or had paid. It is further erroneous in that, while purporting to cover the whole case, it entirely omits any reference to the defense of the company and the individual defendants either as pleaded or in evidence. For these errors in this instruction the judgment would have to be reversed, but as our decision will be placed on another proposition, going to the root of the case, we do not discuss this instruction any further.

.This brings us to a consideration of the demurrer to the evidence. It will be noticed that this second count of the petition is apparently based entirely upon *quantum meruit* and not upon express contract. The first count of the petition was founded on the breach of a specific contract. On that issue the jury found in favor of all of the defendants and against plaintiff.

A very careful reading of all of the testimony fails to convince us that plaintiff made out any case entitling him to go to the jury on this second count of his petition.

It appears from the evidence in the case that plaintiff had been engaged in cities other than St. Louis in

organizing retail grocers into a company from which they, as members of the corporation, would obtain their merchandise, in a way a wholesale house, which would give the stockholders owning it the opportunity of buying direct without the intervention of a third party and in that way effect a saving to them in the cost of the merchandise. Plaintiff came to St. Louis and through the intervention of an attorney obtained permission to address the Retail Grocers' Association of St. Louis, an unincorporated body made up of grocers in that city and possibly of other merchants not exclusively in the grocery business, and at a meeting of that association asked permission to present his scheme. This permission was granted and plaintiff, with his attorney, attended a meeting of the Retail Grocers' Association held in December, 1910, and laid before that body his scheme, which was to organize a corporation made up of retail grocers with a capitalization of $150,000, the stockholders and subscribers to it being confined to retail grocers, the shares in it to be $50 a share, the subscribers to take five shares each, no one subscriber to take more than five shares and each subscriber, at the time of his subscription, to pay in ten per cent. of that amount, that is $25, out of which plaintiff was to receive as commission and as covering all of his expenses $10 on each subscription so made and paid and one-half of one per cent. on the gross sales of the corporation for a period of five years after it was organized. The proposition as made to the Retail Grocers' Association at this first meeting was not acted upon. After the meeting adjourned, however, a number of the gentlemen who had been at the meeting, as we gather some twenty or more of them, possibly, adjourned to a neighboring cafe or saloon and discussed the matter further with plaintiff. The proposition, according to plaintiff, was favorably considered by these gentlemen, among those present being the defendants Lukenbill and Vandeloecht, Mr. Kelly, however, not being present, and it was proposed that a temporary organization be formed for the promotion of the plan. According to the testimony of the defendants and of several other witnesses

who were present at this meeting in the cafe, however, plaintiff was distinctly told that that part of his plan which contemplated the payment of one-half of one per cent. on gross sales for a period of five years would not be entertained. There was evidence tending to show that this objection to the plan had been made by several of the gentlemen at the meeting of the Retail Grocers' Association. At all events, at this first meeting in the cafe nothing very definite appears to have been agreed upon. About two weeks after that there was another meeting of the Retail Grocers' Association at which plaintiff was present and again presented his plan. As all of the witnesses for defendants testified, the Retail Grocers' Association, as a body, turned down the proposition, and refused, as a body, to have anything to do with it. According to plaintiff's testimony there was no formal action taken at that meeting, but he does not claim that his plan was accepted by the Retail Grocers' Association. At all events, after this second meeting of the Retail Grocers' Association a number of the gentlemen, who were members of that association and had attended the meeting, again accompanied plaintiff to the cafe or saloon in the neighborhood and took up with him his proposition. According to plaintiff, he again stated that if they accepted his proposition for the promotion and organization of the proposed corporation that he was to receive $10 on each $25 paid on subscriptions which he secured to stock, and one-half· of one per cent. on the gross sales of the proposed corporation for a period of five years. Each of the individual defendants and practically every other witness in the case testifies that this last part of the proposition, that is the part for the payment of one-half of one per cent. of the gross sales, was absolutely and unequivocally rejected. These promoters, as we may call them for brevity, meaning by that the individual defendants and the others associated with them in the preliminary negotiations and plans, did agree, however, to go into a corporation as proposed by plaintiff, he to solicit stockholders or members for it and all parties finally agreeing, according to the individual de-

fendants and their witnesses, that for his services, expenses, and labors in connection with soliciting subscriptions to the capital stock of the proposed corporation plaintiff was to receive $8 on each $25 collected in the city of St. Louis and $10 for each subscription secured by him outside of the city of St. Louis. There was evidence to the effect that in these meetings in the cafe and at other places afterwards, some of the gentlemen with whom plaintiff was negotiating had distinctly asked plaintiff if he was still adhering to his claim of receiving one-half of one per cent. on gross sales, and that plaintiff told them that that part of the plan had been abandoned and that his compensation as covering his services and expenses was to be $8 in the city and $10 in the country on each subscriber obtained by him. After an unsuccessful effort to obtain subscribers in the city to the number expected, in point of fact only about twenty having been there obtained, plaintiff succeeded in obtaining subscriptions outside of St. Louis from about one hundred twenty-seven stockholders, a total of one hundred forty-seven, according to the exhibit of names introduced by plaintiff. Up to this time it was contemplated by all the parties that a corporation with a capitalization of $150,000 was to be organized, $75,000 to be common stock and $75,000 to be preferred stock, and there is evidence that plaintiff had assured the promoters that he would be able from his past experience to obtain the necessary subscriptions to this $150,000 proposed corporation in about six months. After the plaintiff had been at work for some sixteen or seventeen months, he succeeded in securing subscriptions to the amount of only $36,500, whereupon the promoters concluded to abandon the effort to raise $150,000 capital, and in March, 1912, organized and incorporated the defendant corporation on a capital of $50,000, $25,000 paid in cash. To enable plaintiff to solicit subscriptions and at his suggestion, the promoters, how many of them is not clear, but apparently ten or more, who had agreed to go into the matter, and apparently also on the suggestion of plaintiff, organized themselves into what they

called a "paper association" and elected what they called "paper officers," of whom the defendant Kelly was elected president, Vandeloecht, treasurer, and Lukenbill, secretary, and at plaintiff's suggestion, in March, 1911, he was given a paper reading thus:

"M. Kelly, Jr., President.    H. Vandeloecht, Treasurer.
St. Louis Wholesale Grocer Company.
Office of
J. D. Lukenbill, Secretary.
3866-68 Folsom Ave.
St. Louis, Mo., March 8, 1911.

To Whom It May Concern:

We are organizing a wholesale grocer house in St. Louis to be owned and controlled by retail grocer stockholders of Missouri and Illinois.

This will introduce Mr. N. L. Van Zandt, who is our authorized representative, to explain the proposition fully and to solicit your membership, and collect the first payment, 10 per cent of subscribed stock $25. Check to be made payable to H. Vandeloecht, Treas.
Yours respectfully,
M. KELLY, JR.,
President.:
Countersigned:
J. D. LUKENBILL, Secretary."

Plaintiff was also furnished with a form of receipt to be given to those persons who subscribed to the stock, as follows:

"M. Kelly, Jr., President.    J. D. Lukenbill, Secretary.
H. Vandeloecht, Treasurer.
St. Louis Wholesale Grocer Co.
St. Louis, Mo.
Capital Stock $150,000.00.
$75,000 common.      Fully paid.      $75,000 preferred.
Shares $50.00 each.
————————hereby subscribe for five (5) shares common stock in the St. Louis Wholesale Grocer Co., pay-

able $5 per share now, and balance, $45 per share, when ready to begin business.

Make checks payable to H. Vandeloecht, Treasurer.
Received of ———————$25, being first payment of five (5) shares of common stock in the St. Louis Wholesale Grocer Co., payable $5 per share now, and balance, $45 per share, when ready to begin business.
ST. LOUIS WHOLESALE GROCER CO.,
St. Louis, Mo.
By————
Authorized Representative."

As before stated, while plaintiff commenced his work in January, 1911, the capital with which to start the $50,000 corporation, that is to say the defendant St. Louis Wholesale Grocer Company, was not secured until March, 1912. The corporation thereupon commenced business about March 15, 1912, and continued in business for a year, when it sold out to another concern, some of the stockholders in the old company becoming stockholders in the purchasing company. During this year of its existence, the gross sales of the corporation amounted to $176,270.94. The promoters' organization, or "paper organization" had continued and plaintiff worked under their direction in soliciting subscriptions to the stock, apparently until the organization and incorporation of the defendant corporation in March, 1912. The corporation was organized with thirteen directors, of whom the defendant Kelly was one and the president, Lukenbill another and treasurer, and Vandeloecht, a director. Who the remaining ten directors were does not appear. After the organization of the corporation, the plaintiff having been paid $1700, as he says "on general account for services and expenses," but according to the defendants and all witnesses testifying for them, "in full for all his services in the promotion of the company," plaintiff asked one or more of the members of the board of directors of the corporation defendant to present his claim

to the board "for additional compensation." Whether he asked that of the corporation on the basis of one-half of one per cent. of the gross sales, or for what amount, in no manner appears. This was at the very beginning of its legal organization and commencement of business by the corporation. The claim of plaintiff for compensation in addition to the $1700, then being presented to the board of directors, plaintiff himself being present, the board of directors declined to make any further payments to him, denying that plaintiff was entitled to any compensation beyond what he had earned and received on sales of stock, and claiming that he had been paid in full in accordance with the understanding for all services that he had rendered and that the corporation owed him nothing.

There was no evidence of the amount of expenditures of plaintiff, beyond his statement that in going from town to town he paid his railroad fare and hotel bills. How much these amounted to, does not appear, nor was there any evidence offered or introduced as to the value of the services on his promotion work.

While this is but a summary of a mass of testimony, we think it is a substantially correct statement of the evidence in the case. It must be borne in mind that when evidence was offered and introduced, both counts of the petition were before the court and jury and the court instructed on both.

The verdict on the first count, which sounded in damages for breach of a specific contract, as before noted, was in favor of all the defendants, both the individuals and the corporation, and the verdict against the corporation rests entirely upon the second count—that seeking recovery as on *quantum meruit*. We are concerned with the second count alone.

We are therefore to determine whether on that evidence plaintiff made out his claim for compensation under the second count.

As is said by the supreme Court of Arkansas in Little Rock & Ft. Smith R. R. Co. v. Perry, 37 Ark. 164,

l. c. 194, "It is certainly the duty of the party having the *onus* to produce a preponderance of proof, otherwise matters should stand as they are. The degree of preponderance is immaterial, but there must be *some,* of which the jury should judge." We refer to this case because it is cited on another proposition by the learned counsel for the respondent. Our Missouri decisions are to the same effect; that is, there must be substantial evidence on the part of the plaintiff, tending to establish the claim which he makes, to justify and warrant the court in submitting the case to the determination of the jury. In the case at bar, we find no such substantial evidence as justifies a verdict against the dedefendant corporation on the second count.

Learned counsel for respondent placed great reliance upon the decisions of our Supreme Court in Taussig v. St. Louis & Kirkwood Ry. Co., 166 Mo. 28, 65 S. W. 969, and Taussig v. St. Louis & Kirkwood R. R. Co., 186 Mo. 269, 85 S. W. 378, as also, among others, on Little Rock & Ft. Smith R. R. Co. v. Perry, supra, and Bell's Gap R. R. Co. v. Christy, 79 Pa. St. 54. On their facts we find no analogy between these cases and that at bar. In the first place, the parties with whom plaintiff claims to have made his original bargain were no more the corporation than was plaintiff himself. They were all mere promoters. Paraphrasing what is said by Judge GRAVES in Taylor v. St. Louis National Life Ins. Co., 26 Mo. 283, l. c. 290, 181 S. W. 8, it stands out in bold-faced type that Kelly and the other individual defendants were not and could not have been president, secretary and treasurer of the defendant corporation at the time of the alleged employment of plaintiff. Further along in the opinion in that case, Judge GRAVES says (l. c. 293 *et seq.*), and referring to an alleged contract between the plaintiff there and what is called the "organization committee:" "All the proceedings seem to appear in the name of the organization committee, until the time came when, as they thought, all the proposed charter capital had been subscribed, whereupon they all met, adopted the proposed

charter, selected the board of directors, and such board in turn selected the officers, which we have named. This, however, was all done subsequent to the alleged employment of plaintiff. At the time of plaintiff's employment, neither S. nor his committee had any stock to sell.''

As a general rule, a corporation is not liable for services rendered by a promoter. There are cases, however, which hold that a promoter is entitled to recover for services rendered by him in promoting the corporation. "But in such cases it should be made to appear: (a) that he himself expected to be compensated for his services; (b) that such services were rendered at the request of, or under contract with the associate promoters, or a majority of those; and (c) that the acts done were necessary to the organization and its objects, and that the corporation received and enjoyed the benefits." [1 Thompson on Corporations (2 Ed.), secs. 88 and 89.]

It is true that our Supreme Court has said in Taussig v. St. Louis & Kirkwood Ry. Co., 166 Mo. l. c. 38, referring to services in the preparation of articles of incorporation, and in connection with procuring the incorporation, "That for such services the plaintiff may recover upon an implied promise to pay their reasonable value is also sustained by the weight of authority, unless the understanding was that they were to be gratuitous." Judge BRACE cited a number of authorities, including that of Bell's Gap R. R. Co. v. Christy, 79 Pa. St. 54, of which he says that the rule is there well stated, and quotation is made of the first of the syllabi of that case. When we turn to the Pennsylvania decision itself (l. c. 59), we find the law more fully stated than in the syllabus, thus:

"We do not desire to controvert the principle, established in England, and to some extent recognized in this country, that when the projectors of a company enter into contracts in behalf of a body not existing at the time, but to be called into existence afterwards, then if the body for whom the projectors assumed to act does

come into existence, it cannot take the benefit of the contract without performing that part of it which the projectors undertook that it should perform. Conceding to this principle its full force and effect, we are unable to see its application to the facts of this case. It may very well be that where a number of persons not incorporated are yet informally associated together in the pursuit of a common object, and with the intent to procure a charter in the furtherance of their design, they may authorize certain acts to be done by one or more of their number, with an understanding that compensation shall be made therefor by the company when fully formed. And if such arts are necessary to the organization and its objects, and are subsequently accepted by the company, and the benefits thereof enjoyed by them, they must take such benefits *cum onere,* and make compensation therefor. But the projectors or promoters of the enterprise within the meaning of the rule referred to, evidently must be a majority at least of such persons, and not one, two, or three, or a small minority thereof. Such minority can have no more authority to bind the association or corporation in its incipient or inchoate condition than they would have to bind it if fully organized. In this case the two or three persons who it is alleged promised the plaintiff to see him paid, bound no one but themselves.''

See further on this, Queen City Furniture & Carpet Co. v. Crawford, 127 Mo. 356, 30 S. W. 163.; State ex rel. Hadley v. People's United States Bank, 197 Mo. 574, l. c. 591, 94 S. W. 953; Taylor v. St. Louis National Life Ins. Co., supra, Van Noy v. Central Union Fire Ins. Co., 168 Mo. App. 287, l. c. 295, 153 S. W. 1090; Royal Casualty Co. v. Fuller, not yet officially reported, but see 186 S. W. 1099.

It does not appear in the case at bar how many were associated with these three individual defendants in acceding to the proposition which plaintiff claims. It does appear, however, affirmatively, that there were more than the three individual defendants associated together in this preliminary work, and it most certainly

does not appear that the three individual defendants here, whose agreement is here relied on, constituted a majority of such parties. No one of these individual defendants was in the position of the officer who had made the arrangement with Mr. Taussig as in the St. Louis & Kirkwood Railway Company cases, supra, and the services there rendered were of a totally different kind and scope than these at bar. So that the decision of our Supreme Court in the Taussig cases is to be taken in connection with the facts there present, which were entirely absent in the case at bar. That may be said of the case of Little Rock & Ft. Smith R. R. Co. v. Perry, supra. An examination of that case discloses a state of facts entirely different from the case at bar. Moreover, while the Supreme Court of Arkansas there states the rule as developed in the English courts of chancery as an equity doctrine and applicable in actions at law *ex aequo et bono* as preventing fraud and imposition, after an examination of the authorities at page 191, sums up the rule to be derived from them, "that, in order to recover in an action at law, the plaintiff must show either an express promise of the new company, or that the contract was made with persons then engaged in its formation, and taking preliminary steps thereto, and that the contract was made on behalf of the new company, in the expectation on the part of plaintiff, and with the assurance on the part of the projectors, that it would become a corporate debt, and that the company afterwards entered upon and enjoyed the benefit of the contract, and by no other title than that derived through it. From these circumstances an affirmance would be implied." The Supreme Court of Arkansas held that there must be some showing of ratification or, more correctly speaking, adoption, by the corporation when organized, beyond the mere fact that by being organized at the time it was it became entitled to the benefit of the land grant which plaintiff's efforts had saved to the company.

These cases which we have cited from the Pennsylvania and Arkansas Supreme Courts are leading cases

on the subject. Another case in which the authorities are very fully collected is that of Cushion Heel Shoe Co. v. Hartt, 181 Ind. 167. It is held in that case, quoting from the syllabi, "A promoter, in bringing about the organization of a corporation, and securing stock subscriptions, occupies a fiduciary relationship towards the corporation, the stockholders, and those who are expected to buy stock, and where he expects to be paid for his services that fact should be disclosed to them in advance." It is further there said: "In the absence of statutory or charter provisions, a corporation will be held liable for services rendered by its promoters before incorporation only when, by express action taken after it has become a legal entity, it recognizes or affirms such claim." That is what we practically held in Royal Casualty Co. v. Fuller, supra.

Another point to be here borne in mind is, this is an action at law on *quantum meruit* as set out in this second count. Not a particle of testimony was given or offered to show the value of any services, so upon what basis the jury awarded plaintiff $2000 is impossible of ascertainment. The learned counsel for respondent attempts to meet this proposition by saying that even if there was no evidence of the value, which, however, that counsel denies, the case could nevertheless have gone to the jury. In support of this, counsel cites some cases which he thinks sustain him. We do not think they cover services of the kind here involved.

In Bradner v. Rockdale Powder Co., 115 Mo. App. 102, 91 S. W. 997, where it appeared that no proof was adduced to show the reasonable value of the services of plaintiff rendered in selecting a suitable site for the erection of a powder magazine, plaintiff insisting that the value of such services came within the reasonable common knowledge of ordinary men and that the jury might settle on that value without evidence to aid them, our court said: "The reasonable value of such services as plaintiff rendered is not a matter of such common knowledge that testimony on the subject may be dispensed with. . . . The very essence of a case *quan-*

*tum meruit* is the reasonable value of the work or property in dispute; and when the case is such that the inquiry as to the value is susceptible of proof by testimony, proof must be made." We followed this in Woodward v. Donnell, 146 Mo. App. 119, 123 S. W. 1004, where other authorities bearing on the same proposition are collated.

Without going further into the authorities and referring to those which are so fully reviewed in the cases which we have cited, it is sufficient to say that it does not appear in the first place that the three individual defendants, who are alleged to have employed plaintiff, were a majority even of the promoters; in the next place, the testimony is entirely too indefinite to constitute substantial testimony to the effect that even these parties may be said to have availed themselves of the services of the plaintiff with any sort of understanding that he was to receive, in addition to his commissions on the sale of stock, one-half of one per cent. on the gross sales of the corporation when formed, for a period of five years, or any other sum. That depended on the contract set up in the first count of the petition and the verdict of the jury against plaintiff and in favor of all the defendants negatives the existence of the contract there alleged. Furthermore, it does affirmatively appear that when the matter of the services of plaintiff was first called to the attention of the directors of the corporation after its organization, they not only denied any such understanding as to payment of one-half of one per cent. on the gross sales of the company for five years, or any other sum, but explicitly claimed that plaintiff had been paid in full for all the services which he had rendered in connection with the sale of stock.

It is to be borne in mind that there is no pretense that the plaintiff in this case rendered any services whatever in connection with the organization of the corporation, beyond soliciting and receiving subscriptions to its proposed capital stock. None of the facts present in the Taussig cases, or in the Arkansas, Indiana and Pennsylvania cases are here present. In each one of

these cases, visible, tangible property, which had been secured or procured by the promoter, had been turned over to the corporation after its organization and was retained by it, and in the Taussig cases the defendant had availed itself of the professional services of the plaintiff in effecting its organization, he even undertaking in its behalf, defense of suits that were brought affecting the property in which the corporation was to become interested.

In the Royal Casualty Company case, supra, as before noted there was a distinct adoption of the contracts of the promoters, made by the corporation after its organization, with a full knowledge of all the facts connected with it. If we are to allow the plaintiff to prevail in this case, we must hold that by the mere act of accepting incorporation—by the mere act of becoming a corporate body, the corporation, as an entity, had accepted the benefit of the services of the plaintiff in obtaining subscriptions to its capital stock. Of course, it could not lawfully engage in business, under our law, until at least one-half of the stock is subscribed and paid for in cash or its equivalent. [Laws 1911, p. 148.] Beyond this soliciting and placing of subscriptions to stock, the plaintiff here does not pretend to have rendered any services whatever in connection with the organization of the corporation. Yet to enable plaintiff to recover, we must hold that three of the promoters had power to pledge the whole income of the corporation to be formed to a payment to this plaintiff for his services in procuring subscriptions to its stock, and that by the mere act of incorporation, accepting the subscriptions and going on with its business, the corporation bound itself to pay for obtaining the subscriptions. Until the organization of the corporation, the only parties concerned in securing subscriptions to the proposed corporation were the promoters, of whom plaintiff himself was one, and all the work plaintiff performed and all the services he rendered were for the promoters and not for the corporation. The corporation, as such, prior to its organization, was not concerned in that. We are

unwilling to hold that by the mere fact of accepting incorporation and proceeding as a corporate body, the corporation, as such, could be made liable on any such contract by a few of its promoters, and we venture to go further and say that we do not believe that it was within the power of any promoter, in any such manner as here claimed, to encumber the whole property of the corporation—all of its business. We are aware that there are some cases which seem to hold that mere services in procuring the sale or subscriptions to the capital stock of a proposed corporation are such services, when rendered at the instance of the promoters, as imposes an obligation on the corporation, when formed, to pay the reasonable value of those services. We in effect held to the contrary in Royal Casualty Co. v. Fuller, supra. We find no authority in our State authorizing any such conclusion, and in the absence of controllig decisions of our own courts, we are unwilling to sanction such a rule. Here we have nothing to carry knowledge to the stockholders as a body, or even a majority of them, nor is there any proof even tending to show ratification by the stockholders of any agreement by which the assets of the corporation, which they were invited to become a part of, were subject to any burden for preliminary work of organization, a burden which might have "killed" the organization at its start.

On the grounds we have stated, plaintiff is debarred from any recovery, and the demurrer to the evidence should have been sustained.

The judgment of the circuit court must be reversed. It is accordingly so ordered. *Allen* and *Thompson, JJ.*, concur.